Vanderly Rebouca DA ROCHA, individually, Plaintiff,

Renato Moriz De Souza, individually, Plaintiff,

Damiana Garcia Costa, individually and as Personal Representative of the Estate of Rosevaldo Aguiar Costa, deceased Plaintiff,

Ethel Ferreira Poll, individually and as Personal Representative of the Estate of Henrique Otavio Poll, deceased Plaintiff,

Percy Jacobs, individually, Plaintiff,

Rubem De Jesus Dias, Jr., individually, Plaintiff,

v.

BELL HELICOPTER TEXTRON, INC.; and ROLLS–ROYCE CORPORATION, Defendants.

Nos. 05–22767–CIV, 05–22768–CIV, 05–22769–CIV, 05–22770–CIV, 05–22771–CIV, 05–22773–CIV.

United States District Court, S.D. Florida.

Sept. 8, 2006.

Ricardo M. Martinez, Steven Craig Marks, Podhurst Orseck, P.A., Miami, Florida, for Plaintiffs.

Joseph Thompson Thornton, Mark David Bohm, Kathleen M. O'Connor, Thornton Davis & Fein, Miami, FL, John P. O'Flanagan, III, Louis Robert Bourgeois, Fowler White Boggs Banker, Tampa, FL, for Defendants.

### ORDER GRANTING MOTION TO DISMISS

UNGARO–BENAGES, District Judge.

This case is before the court on Defendant Rolls Royce Corporation's Motion to Dismiss On Ground of Forum Non Conveniens. (D.E.27). Defendant Bell Helicopter Textron, Inc. ("Bell Helicopter") has joined in the motion and the motion is fully briefed. After full consideration of the record, for the reasons explained below, the Motion is GRANTED.

### BACKGROUND

These consolidated product liability cases arise out of the crash on November 13, 2003 of a helicopter registered in Brazil under prefix PT–YEE and operated by

Helisul Taxi Aereo Ltda. ("Helisul") in the rain forest in the Amazon state of Brazil. *See,* Da Rocha Compl.¶ 9. Helisul is a privately owned company incorporated under the laws of Brazil, with its headquarters and principal place of business in Foz do Iguacu, Brazil. Almeida Aff.¶ 2. Helisul specializes in air taxi service, transporting passengers and cargo by air to oil platforms inland and offshore of Brazil. On November 13, 2003, the subject helicopter was on a flight from the oil drilling district of Coari to the Petrobas oil company base in Urucu, Amazon. Helisul's pilot and three passengers sustained injuries and two passengers died as a result of the crash. *Id.* ¶ 3. All were Brazilian nationals residing in Brazil. *Id.* ¶ 3.

Helisul took possession of the subject helicopter in Fort Worth, Texas. The helicopter, manufactured by Bell Helicopter was a model 206L–4, equipped with an Allison ("Rolls Royce") 250–C30P engine. Da Rocha Compl.¶ 4. The helicopter was designed and manufactured by Bell Helicopter in Texas and Canada, and Bell Helicopter developed the specifications for the engine in Texas. The engine, however, was designed, manufactured and tested by Rolls Royce in Indianapolis, Indiana. Before installation in the accident aircraft, the engine also was flight tested by Bell Helicopter in Mirabel, Canada and in the United States. Bell Helicopter is a Delaware corporation headquartered in Texas. Rolls Royce is a Delaware corporation with its principal place of business in Indianapolis, Indiana. Nearly all of the witnesses with information concerning, and all of the documents relating to the design, manufacture and testing of the helicopter and engine are located in Texas, Indianapolis and Canada.

In response to the accident, the Brazilian civil aviation authority (the "DAC") initiated an investigation which remains ongoing. Other than monitoring the investigation, the record contains no information regarding Bell Helicopter's involvement to date. Suttle Dep. 14–16. On the other hand, the record is clear that Rolls Royce has assisted DAC. Notably, an important part of the investigation was a teardown of the engine at Rolls Royce Brazil. The teardown team included Michael Webber, a Rolls Royce Senior Air Safety Investigator from Indianapolis, as well as a Brazilian government investigator, a representative of Rolls Royce Brazil, and representatives of Helisul. Webber Dep. 12–13. Also, after the teardown, approximately 100 engine parts were shipped to Indianapolis for metallurgical analysis by Rolls Royce employees. *Id.* 16–17. The parts were later shipped back to Brazil. *Id.* 21. Rolls Royce maintains its documents, including photographs, relating to the teardown, the metallurgical analysis, and the accident mainly in Indianapolis. *Id.* 14, 21.

### ANALYSIS

■■■ Under the doctrine of *forum non conveniens,* a district court has the inherent power to decline to exercise jurisdiction even when venue is proper. *See, Gulf Oil v. Gilbert,* 330 U.S. 501, 506–07, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). To obtain dismissal under the doctrine, "the moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private interest factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Leon v. Million Air, Inc.,* 251 F.3d 1305, 1310–11 (11th Cir.2001). With respect to the second element of the analysis, "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235,

255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). However, "the presumption applies with less force when the plaintiffs or real parties in interest are foreign." *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir.1983).

### A. Availability of Adequate Alternative Forum

■■ For forum non conveniens purposes, forum availability and adequacy are separate inquiries. "Ordinarily, [the availability] requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Piper Aircraft*, 454 U.S. at 265 n. 22, 102 S.Ct. 252 (quoting *Gilbert*, 330 U.S. at 506–07, 67 S.Ct. 839). Here, both Bell Helicopter and Rolls Royce have stipulated through their respective counsel that they will submit to the jurisdiction of the Brazilian courts and accept service of process from the courts of Brazil for these claims provided the plaintiffs initiate their suit in Brazil within 180 days of dismissal of their cases in this court. Additionally, Rolls Royce has submitted the affidavit of Carlos Geraldo Egydio Rameh, a Brazilian lawyer and expert on Brazilian law, who explains that the Brazilian courts would have subject matter jurisdiction over these disputes because the accident occurred in Brazil and personal jurisdiction over Bell Helicopter and Rolls Royce due to their consents to jurisdiction. In light of these stipulations and the affiant's testimony, the Court finds that Brazil is an available alternative forum. *See Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1282–83 (11th Cir. 2001) (affirming determination of availability based on defendant's consent to jurisdiction of foreign courts); *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1429 (11th Cir.1996) ("Here the defendants agreed to submit to jurisdiction of an alternative forum (in France), rendering that forum available.").

■ An alternative forum is "presumed 'adequate' unless the plaintiff makes some showing to the contrary." *Leon*, 251 F.3d at 1312. "An adequate forum need not be a perfect forum." *Satz*, 244 f.3d at 1283. However, "where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative..." *Piper Aircraft*, 454 U.S. at 255 n. 22, 102 S.Ct. 252. As explained in the Affidavit of Carlos Geraldo Egydio Rameh, Articles 186 to 188 and Articles 927 to 954 of the Brazilian Civil Code, as well as Article 5 of the Brazilian Aeronautical Code furnish the Plaintiffs herein with rights to seek damages on account of this accident in the Brazilian courts. Additionally, according to Attorney Rameh, Plaintiffs can sue Bell Helicopter and Rolls Royce for damages incurred as a result of the accident in Brazil for products liability pursuant to Brazil's Consumer Protection Code. Attorney Rameh further explains that such proceedings are conducted in the first instance in a trial court sitting without a jury in which documents, testimony, other evidence and legal argument are presented in accordance with the Brazilian Civil Code of Procedure; additionally, all interlocutory and final decisions are appealable to higher courts by the losing party. Plaintiffs do not dispute these representations. Accordingly, this court has no reason to find other than that Brazil provides Plaintiffs with an adequate alternative forum.

### B. Private and Public Interest Factors

#### i. *Plaintiffs' Choice of Forum*

■ As explained above, "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft*, 454 U.S. at 255, 102 S.Ct. 252. However,

the presumption applies with less force when the plaintiffs are foreign. *La Seguridad,* 707 F.2d at 1307. That is particularly true where the "archetypal foreign plaintiff bring[s] her foreign tort claim to American courts to secure relief more generous than she would get under the law of her homeland." *Sigalas v. Lido Maritime, Inc.* 776 F.2d 1512, 1520 (11th Cir. 1985).

▇ Despite the fact that the Plaintiffs herein are foreign, Plaintiffs argue that they should receive the full benefit of the presumption in favor of their chosen forum because Brazil and the United States have a treaty guaranteeing Brazilian citizens access to the United States courts equal to that of United States citizens. Plaintiffs did not supply the treaty, but Bell Helicopter and Rolls Royce did as Exhibit A to their reply memorandum. The treaty plainly refers only to legal actions involving citizens of one signatory who are "transient or dwelling" in the territory of the other signatory. *See* Treaty with Brazil, March 18, 1829. Art. XII, 8 stat. 390, 392. Since the Plaintiffs are not "transient or dwelling" in the United States, the treaty does not bolster their argument that their choice of forum is entitled to deference. *See Morales v. Ford Motor Co.,* 313 F.Supp.2d 672 (S.D.Tex.2004) (nothing in treaty with Venezuela containing identical language altered Supreme Court's directive that a foreign plaintiff's choice of forum is entitled to less deference.) Accordingly, the Court finds that the Plaintiffs' choice of forum is entitled to little deference.

### ii. Private Interest Factors

▇ The private interest factors to be considered include.

the relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling, and the cost of obtaining the attendance of willing, witnesses; possibility for view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Piper Aircraft,* 454 U.S. at 241 n. 6, 102 S.Ct. 252 (*quoting Gilbert,* 330 U.S. at 508, 67 S.Ct. 839).

▇ The court has carefully weighed the parties representations concerning the ease of access to proof in the competing jurisdictions. While it is true that the Plaintiffs have identified numerous witnesses and documents in the United States and Canada, none of them are in Florida where this Court sits. Putting that fact aside, it appears from the deposition excerpts supplied by Plaintiffs that all of the documents and witnesses in the United States and Canada, other than the few prepared by Rolls Royce related to the teardown and metallurgical analysis, and the red top report, are concerned with the design manufacture and testing of the helicopter and engine before Helisul took possession. These witnesses and documents may or may not yield important evidence depending on the cause of the accident. *See Rivas v. Ford Motor Co.,* 2004 WL 1247018, at *9 (M.D.Fla. Apr.19, 2004) ("[d]esign is not, as plaintiffs contend, the de facto center of controversy in this case."). In contrast, the accident occurred in Brazil and therefore all of the eyewitnesses are located there, the company that owned and operated the helicopter at the time of the accident, Helisul, is in Brazil, the logbooks for the aircraft and training records for the crew are in Brazil, the aircraft wreckage is in Brazil, the parts of the engine on which the metallurgical analysis was conducted are in Brazil, the Helisul employees with responsibility for the helicopter are in Brazil, the crash is being investigated in Brazil under the direction of DAC, the teardown was conducted in

Brazil, and the air traffic controllers who monitored or directed the flight are in Brazil. Additionally, Plaintiffs' and decedents' relatives, friends, employers, physicians and other health care providers are all in Brazil. Consequently, documents such as investigative reports, medical and employment records, radar computer data, personnel records for the pilot and crew and financial records relating to the Plaintiffs and decedents are all located in Brazil. Moreover, the third party witnesses and documents in Brazil are beyond the subpoena power of this court; therefore, the parties would be severely handicapped if forced to litigate in this forum. Thus, based on the quantity and quality of the evidence most likely to be relevant in this case, the Court finds that the parties will have greater access to proof in Brazil.

Second, the availability of witnesses is greater and less costly in Brazil. As noted above, there are numerous third party witnesses—including eye witnesses, investigators, medical professionals, and Helisul employees—in Brazil. Transporting all of these individuals to the United States would be more costly than litigating in Brazil. More importantly, this Court cannot compel these third party witnesses to give testimony or produce documents in this jurisdiction; on the other hand, as explained by Attorney Rehma, the Brazilian trial courts have subpoena power to compel the attendance of such witnesses and the production of documents. Rehma Aff. ¶¶ 19–20. As for Plaintiffs' proposed witnesses located in the United States, nearly all are employees of Bell Helicopter and Rolls Royce, and therefore within the power of the Defendant companies to insure their appearance in the Brazilian courts. Perhaps in recognition that this Court can condition dismissal on Bell Helicopter's and Rolls Royce's agreement to make documents and witnesses available as required by the Brazilian courts, they

have agreed to do so. *Piper Aircraft,* 454 U.S. at 257 n. 25, 102 S.Ct. 252.

The third factor—the possibility for view—obviously militates in favor of dismissal. The wreckage, the scene of the accident and the parts that were the subject of the metallurgical analysis are all located in Brazil.

Finally, the Court finds that there are at least two other significant practical problems that will make trial of this case easier, more expeditions and inexpensive in Brazil. First, as Bell Helicopter and Rolls Royce argue, and Plaintiffs do not contest, they will not be able to join Helisul in these consolidated actions because they will be unable to obtain personal jurisdiction over the company, whereas Helisul could be joined in an action in Brazil. In other words, litigation in this forum creates a potential for incomplete relief and prejudice to Bell Helicopter and Rolls Royce with respect to the allocation of liability. *Gambra v. Int'l Lease Finance Corp.,* 377 F.Supp.2d 810, 824 (C.D.Cal. 2005). Secondly, Plaintiffs as well as many of the third party witnesses presumably are Portuguese speakers and they will be able to more fully participate at less expense in proceedings that are conducted in their native language.

In sum, after carefully considering the arguments of the parties, the Court finds that the private interest factors weigh heavily in favor of dismissal. It is apparent to the undersigned that if these claims are brought in Brazil, the parties will have greater access to all important witnesses and documents necessary to present their cases. On the other hand, if the cases remain here, Bell Helicopter and Rolls Royce will be deprived of dozens of potentially key third party witnesses and documents, and, importantly, the ability to join Helisul.

### iii. Public Interest Factors

■ The public interest factors to be considered include:

the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness in burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft,* 454 U.S. at 241 n. 6, 102 S.Ct. 252 (internal quotation marks omitted) (quoting *Gilbert,* 330 U.S. at 509, 67 S.Ct. 839).

■ As an initial matter, this Court agrees with Bell Helicopter and Rolls Royce that, from an administrative standpoint, it make little sense to use the resources and facilities of a busy United States federal court to try these cases. As already explained, many of the most important witnesses and documents are located in Brazil and beyond the subpoena power of this court. To the extent the parties could employ treaty requests or letters rogatory, these vehicles are notoriously inefficient and tend to protract and make litigation more costly. Additionally, the necessity of employing translators for the witnesses and to translate every document in Portuguese to English will be inefficient, costly and time consuming. The Court also agrees that compelling local jurors to sit on what undoubtedly will be lengthy trials to resolve these cases that have no connection whatsoever to this community (other than the Plaintiffs' counsel) would impose an unfair burden. *See Proyectos Orchimex de Costa Rica v. E.I. duPont de Nemours & Co.,* 896 F.Supp. 1197, 1203 (M.D.Fla.1995) ("The burden of imposing jury duty on citizens to decide a case with no connection to the forum is a significant factor in performing a forum non conveniens analysis. [Citations omitted] In these cases, the jury duty burden weighs heavily in favor of dismissal.").

The Court further finds, for reasons that should be obvious, that Brazil has a far stronger local interest in deciding these controversies. Plaintiffs are, and the decedents were, all citizens and residents of Brazil, the accident occurred in Brazil and the Brazilian authorities are investigating the accident. Although the United States has some interest in ensuring that helicopters produced by domestic manufacturers are safe, Brazil has a far stronger interest in adjudicating lawsuits involving injuries to its own citizens that occurred in Brazil where the aircraft has been resident and operating for a lengthy period of time. *See Piper Aircraft,* 454 U.S. at 259–60, 102 S.Ct. at 268 (rejecting argument that "American citizens have an interest in ensuring that American manufacturers are deterred from producing defective products."); *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.,* 382 F.3d 1097, 1104 (11th Cir.2004) ("[I]t is clear that a sovereign has a very strong interest when its citizens are allegedly victims and the injury occurs on home soil."); *Kamel v. Hill–Rom Co., Inc.,* 108 F.3d 799, 804 (7th Cir.1997) (finding "a foreign plaintiff who was injured in a foreign land filing suit against and American defendant with extensive foreign dealings" generates a "mere passing interest" in the United States).

■ The final relevant factor, and it is an important factor, is the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law. After careful consideration of the parties arguments respecting this factor, it is apparent that, at a minimum, if these cases remain here this Court will be asked to decide what Brazilian law is and compare it to

United States law to determine whether a conflict exists and, if it does, to apply applicable Florida choice of law rules, including with respect to tort liability, the most significant relationship test. In that event, it seems likely that because the Plaintiffs are Brazilian, they were injured in Brazil, the accident occurred in Brazil and their relationship to Bell Helicopter and Rolls Royce would be centered in Brazil where they boarded the helicopter, Brazilian law will apply to the issue of liability.[1] Also, with respect to damages, usually the interest of the place of injury is in ensuring that persons who cause injury do not escape liability. *See In re Aircrash Disaster Near Roselawn, Indiana on October 31, 1994,* 948 F.Supp. 747 (N.D.Ill.1996). Plaintiffs argue this general proposition is inapplicable in these cases because Brazil's interest is in seeing its citizens compensated fully for their injuries and Brazilian damages law is more restrictive. However, Plaintiffs have failed to explain or produce any evidence concerning the substantive Brazilian law on damages. Therefore, this Court has no reason to assume that anything other than the general rule will apply and that therefore Brazilian law will apply to the issue of damages if this case remains in this Court. In any event, in *Sibaja v. Dow Chemical Co.,* 757 F.2d 1215, 1218 n. 5 (11th Cir.

1985), the Eleventh Circuit affirmed a dismissal on forum non conveniens grounds where, as in this case, the district court determined it would be "force[d]...to conduct a complex exercise in comparative law and consider a foreign law with which the Court is not familiar and which is in a foreign language."

In sum, the relevant public interest factors also strongly favor dismissal of this case on the basis of forum non conveniens.

### C. Reinstatement of Suit

■ Finally, the Court finds, based on the affidavit of Attorney Rehma, that Plaintiffs can reinstate their suit in Brazil "without undue inconvenience or prejudice." *Leon,* 251 F.3d at 1310–11. Indeed, Plaintiffs do not argue otherwise. Defendants have stipulated that if these actions are refiled in Brazil within 180 days of the dismissal, they will agree to submit to jurisdiction of the Brazilian Court, accept service of process from the courts of Brazil, treat the actions filed in Brazil as though they had been filed on the date they were filed in this court, and pay any final judgments. Defs.' Motion p. 4, ¶ 14. The Court finds these conditions avoid unnecessary prejudice to Plaintiffs. *See Magnin,* 91 F.3d at 1430–31. Therefore, the Court dismisses this

---

1. In *Bishop v. Florida Specialty Paint Co.,* 389 So.2d 999, 1001 (Fla.1980). In *Bishop,* the Florida Supreme Court adopted Section 145 of the Restatement (Second) of Conflict of Laws for determining which state's substantive law applies. *Id.* Section 145 provides:
   (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
   (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.
*Restatement (Second) of Conflict of Laws* § 145 (1971).

action subject to Defendants' representations. Specifically, Defendants shall waive any statute of limitations defenses for 180 days. Accordingly, it is hereby

ORDERED AND ADJUDGED that Bell Helicopter's and Rolls Royce's Motion to dismiss On Ground Of Forum Non Conveniens is GRANTED.