# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FELIX ZILBERSTEIN, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. N21C-01-112 MAA |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL H. FRANKENSTEIN, | ) | |
| JANVEST CAPITAL PARTNERS, LLC, | ) | |
| JANVEST CAPITAL PARTNERS II, | ) | |
| LLC, JANVEST TECHNOLOGIES, LP, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: October 29, 2021
Decided: November 12, 2021

*Upon Defendants' Motion to Dismiss the Complaint*
*or in the Alternative to Stay*
**GRANTED in part.**

## <u>MEMORANDUM OPINION</u>

Antranig N. Garibian, Esquire, (Argued), of GARIBIAN LAW OFFICES PC, Wilmington, Delaware, Attorney for Plaintiff.

Matthew P. Denn, Esquire (Argued), and Peter H. Kyle, Esquire of DLA PIPER LLP, Wilmington, Delaware, Attorneys for Defendant.

**Adams, J.**

## I.    Introduction

Felix Zilberstein ("Zilberstein" or "Plaintiff") is a citizen of Israel and former member of Janvest Capital Partners, LLC ("Janvest I") and Janvest Capital Partners II, LLC ("Janvest II"), two private equity firms in Israel organized under Delaware law.[1] Daniel Frankenstein ("Frankenstein") was a manager of Janvest I and currently serves as a manager to its successor, Janvest II.  Janvest I served, and Janvest II currently serves, as the general partner to Janvest Technologies, L.P. ("Janvest LP") (collectively, "Janvest entities").  Zilberstein filed this lawsuit against Frankenstein and the Janvest entities (collectively, "Defendants").  Defendants moved to dismiss or stay this action pursuant to Superior Court Civil Rule 12(b)(3) in favor of pending litigation in Israel.  Frankenstein, a California resident, has separately moved to dismiss for lack of personal jurisdiction under Superior Court Civil Rule 12(b)(2).  This decision grants Defendants' motion to stay based on the doctrine of *forum non conveniens*.  Given the decision to stay, the Court will not address Frankenstein's motion to dismiss under 12(b)(2) at this time.

---

[1]    Filings in Zilberstein's action in Court of Chancery indicate that Janvest I dissolved as of July 30, 2018, shortly before Janvest II was formed.  *See* Def.'s Op. Br. in Support of Mot. to Dismiss at 1, *Zilberstein v. Janvest Capital Partners LLC*, C.A. No. 2021-0074 (Del. Ch. May 11, 2021).

2

## II.    Factual Background

The facts for purposes of Defendants' motion to dismiss pursuant to Rule 12(b)(3) are drawn from the Complaint, the documents it incorporates by reference, and other filings on the docket. When considering such a motion, the court is not "shackled to the plaintiff's complaint" and may consider extrinsic evidence.[2] At this stage of the case, the Court views the record in the light most favorable to the Plaintiff.

### A. Janvest Entities

Janvest I and Janvest II are private equity firms that invest in early-stage Israeli-based companies. Both are organized as Delaware limited liability companies with operations and members in Israel. In June 2018, Frankenstein formed Janvest II to succeed Janvest I as the general partner of Janvest LP, a Delaware limited partnership. Janvest I and Janvest II made investments through Janvest LP. One company Janvest LP invested in was an Israeli technology company, Electronic Vision Systems Ltd. ("eVision").

---

[2]    *Simon v. Navellier Series Fund*, 2000 WL 1597890, at *5 (Del. Ch. Oct. 19, 2000).

3

B. Janvest LP's Investment in eVision and Zilberstein's Exit

In exchange for Janvest LP's investment in eVision, Janvest LP became an eVision shareholder with the right to appoint a director to eVision's Board of Directors. Janvest LP appointed Zilberstein to serve in this role.

In November 2017, Zilberstein decided to retire. Zilberstein approached Frankenstein and Brian Rosenzweig ("Rosenzweig"), a fellow member of Janvest I and Janvest II, about the transition of his duties. It was around this time that Frankenstein began to suspect that Zilberstein was misappropriating funds properly owed to Janvest LP. Thus, following Zilberstein's decision to retire and upon Frankenstein's suspicions of Zilberstein's alleged misappropriation, Janvest LP informed eVision of its intent to replace Zilberstein's position on the board with Frankenstein. eVision denied Janvest LP's request and informed Janvest LP that Zilberstein served as eVision's CEO for several years. This, coupled with suspicions of Zilberstein's alleged misdeeds, prompted Janvest LP to sue Zilberstein and eVision, along with other eVision directors and officers, in Israel.

C. Emails and Lawsuits

On April 15, 2019, Frankenstein emailed other Janvest I and Janvest II members alleging Zilberstein had improperly served as eVision's CEO and used his position as a conduit for pocketing funds properly owed to Janvest LP ("Defamatory Email 1"). On July 30, 2020, Frankenstein sent a follow up email with the subject

4

"Pending Litigation Notification" ("Defamatory Email 2"). The email informed the recipients of Janvest LP's intent to pursue legal action based on Zilberstein's and eVision's alleged unlawful transfer of funds.

Janvest LP then filed suit in Israel against Zilberstein, eVision, and other eVision directors and officers ("Janvest Israeli Litigation I") ordering eVision to disclose financial statements and allow Janvest LP to appoint a director of their choosing. The suit settled on October 20, 2020. As a result, eVision replaced Zilberstein with Frankenstein on the board and turned over the requested financial records. The disclosure and review of the relevant financial records, Defendants contend, revealed Zilberstein's alleged misappropriation.[3]

Following Janvest Israeli Litigation I, Janvest LP sent a letter to eVision, Zilberstein, and others attempting to recover the funds properly owed to Janvest LP ("Demand Letter"). The Demand Letter, sent on December 9, 2020, stated that if the funds were not received within 21 days, Janvest LP intended to take legal action. Frankenstein then emailed Janvest I and Janvest II members with the subject line "Additional Pending Litigation." In the email, Frankenstein reported the outcome of Janvest Israeli Litigation I, and Janvest LP's intent to recoup its losses ("Defamatory Email 3"). On January 7, 2021, Janvest LP's counsel sent a final

---

[3]    Defs.' Opening Brief ("Def.'s Op.") at 1.

warning to eVision affirming Janvest LP's intent to pursue legal action against Zilberstein and eVision if they could not reach an agreement outside of court.[4]

About a week later, on January 15, 2021, Zilberstein filed his Complaint against Defendants in this Court for defamation.[5] The basis for Zilberstein's defamation action is Defamatory Email 1, Defamatory Email 2, and Defamatory Email 3. Thirteen days later, on January 28, 2021, Janvest LP filed another action in Israel ("Janvest Israeli Litigation II") against Zilberstein, eVision, and other Israeli individuals and entities to recover its losses from Zilberstein's alleged misappropriation. That same day, Zilberstein also filed two separate books and records actions in the Court of Chancery against Janvest I and Janvest II.[6]

D. Procedural History

In Janvest Israeli Litigation II, Zilberstein filed a Statement of Defense and a motion to stay in deference to his actions in this Court and the Court of Chancery.[7] A hearing in Janvest Israeli Litigation II occurred on October 25, 2021.[8] As a result, the court in Israel ordered the parties to complete document production within seven days and engage in pre-mediation.[9]

---

[4]    Def.'s Ex. 3.
[5]    *See* Dkt. 1.
[6]    2021-0074-KSJM and 2021-0075- KSJM.
[7]    Defs.' Reply Br. 7.
[8]    *See* Dkt. 24.
[9]    *Id.*

In response to Zilberstein's Complaint in this Court, Defendants filed a Motion to Dismiss or Stay on April 14, 2021 based on the doctrine of *forum non conveniens* and the pendency of Janvest Israeli Litigation II.

## III.  Standard of Review

The Defendants move to dismiss or stay this action based on the doctrine of *forum non conveniens*.[10]  A motion invoking this doctrine proceeds pursuant to Rule 12(b)(3) for improper venue.[11]  Where an action involving the same or similar parties and the same or similar issues is filed in another jurisdiction contemporaneously with or after the Delaware action, the *forum non conveniens* analysis applies.[12]

The doctrine of *forum non conveniens* grants the court discretionary authority to decline jurisdiction where "considerations of convenience, expense, and the interests of justice" show that the plaintiff's chosen forum would be "unduly inconvenient, expensive, and otherwise inappropriate."[13]  While ordinarily a plaintiff's choice of forum should rarely be disturbed, such choice is not immune

---

[10]   Frankenstein filed a 12(b)(2) motion to dismiss for lack of personal jurisdiction.  Def.'s Op. at 15.  Given the Court's decision to stay the action, the Court will not address Frankenstein's 12(b)(2) motion.

[11]   *See Lefkowitz v. HWF Hldgs., LLC*, 2009 WL 3806299, at *3 (Del. Ch. Nov. 13, 2009).

[12]   *See Martinez v. E.I. DuPont de NeMours and Co., Inc.*, 86 A.3d 1102, 1104 (Del. 2014).

[13]   *Monsanto Co. v. Aetna Casualty and Surety Co.*, 559 A.2d 1301, 1304 (Del. Super. 1988).

from scrutiny.[14]  A plaintiff may not "vex, harass, or oppress the defendant" by imposing unnecessary expense or trouble through an inconvenient forum.[15]

Delaware courts have articulated five factors to consider in a *forum non conveniens* analysis, collectively referred to as the "*Cryo-Maid* factors."[16]  The factors are:

(1) the existence of other litigation involving substantially similar parties or subject matter;

(2) whether the controversy is dependent upon Delaware law;

(3) the relative ease of access to proof;

(4) the availability of compulsory process for witnesses; and

(5) all other practical problems that would make the trial easy, expeditious, and inexpensive.[17]

---

[14]  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Turner Constr. Co.*, 2014 WL 703808, at *2 (Del. Super. Feb. 17, 2014).

[15]  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

[16]  *Martinez*, 86 A.3d at 1104.

[17]  *GXP Cap., LLC v. Argonaut Mfg. Servs., Inc.*, 253 A.3d 93, 101 (Del. 2021) (citing *Aranda v. Philip Morris USA Inc.*, 183 A.3d 1245, 1250 (Del. 2018)).  The *Cryo-Maid* factors are presented in the relative order of importance for corporate and commercial disputes as indicated by the Court of Chancery in *Focus Financial Partners, LLC v. Holsopple*, 250 A.3d 939, 952 (Del. Ch. 2020).  The list omits a *Cryo-Maid* factor – "the possibility of the view of the premises" – because it is irrelevant to this case and not discussed in this decision.  *See Holsopple*, 250 A.3d at 952 n.3 (finding that the view of the premises is not relevant to the case and thus not discussed and noting that the factor is frequently irrelevant in corporate and commercial disputes).

The precise burden on a movant seeking a stay depends on the timing of the Delaware action in relation to any competing actions. If the Delaware action is first-filed, the court, in considering the *Cryo-Maid* factors, gives deference to the plaintiff's choice of forum.[18] To prevail, a defendant seeking to stay a first-filed Delaware action pending the outcome of a subsequent suit must show sufficient "inconvenience and hardship."[19] This standard is notably less demanding than the "overwhelming hardship" standard applicable when a defendant seeks *dismissal* of a first-filed Delaware action.[20]

To justify a stay where competing actions are viewed as contemporaneously filed, the movant must show that overall, the *Cryo-Maid* factors "tips in favor of litigating the dispute in the non-Delaware forum."[21] Where actions are considered

---

[18] *See Chrysler First Bus. Credit Corp. v. 1500 Locust Ltd. P'ship*, 669 A.2d 104, 107-08 (Del. 1995).

[19] *GTE Mobilnet Inc. v. Nehalem Cellular, Inc.*, 1994 WL 116194, at *1 (Del. Ch. Mar. 17, 1994) (citing *ANR Pipeline Co. v. Shell Oil Co.*, 525 A.2d 991, 992 (Del. 1987).

[20] *HFTP Invs., L.L.C. v. ARIAD Pharms., Inc.*, 752 A.2d 115, 121 (Del. Ch. 1999) ("[W]here (as here) the moving party seeks a stay rather than a dismissal, the 'burden on the moving party is a lesser one.'") (quoting *Life Assurance Co. v. Associated Invs. Int'l Corp.*, 312 A.2d 337, 340 (Del. Ch. 1973); *see also Azurix Corp. v. Synagro Technologies, Inc.*, 2000 WL 193117, at *4-5 (Del. Ch. Feb. 3, 2000) ("For this claim to be dismissed, Synagro would have to demonstrate that it would suffer undue…hardship if it is required to litigate in Delaware…Synagro bears a much lighter burden, however, in order to justify a stay"); *see also Moore Golf, Inc. v. Ewing*, 269 A.2d 51 (Del. 1970) ("[T]he burden on the moving party is a lesser one where a stay rather than a dismissal is sought").

[21] *Turner Constr. Co.*, 2014 WL 703808, at *2.

simultaneously filed, the court does not give deference to either forum.[22]  Instead, the Court, in weighing the relevant factors, must determine which of the competing fora would be the more "easy, expeditious, and inexpensive" for litigation.[23]

## IV.    Analysis

Before turning to the *Cryo-Maid* analysis, the Court will determine whether the Delaware action was first-filed or contemporaneously filed with the competing action, as the timing determines the appropriate deference afforded to the plaintiff's chosen forum.

### A. The Delaware Action and Janvest Israeli Litigation II were Filed Contemporaneously

When two cases are filed at approximately the same time, the court compares the fora without preference for one action over the other to avoid rewarding the victor in a "race to the courthouse."[24]  To determine whether an action filed first in time but in close temporal proximity to another action should be treated as contemporaneously filed, the court should consider the circumstances surrounding

---

[22]    *See Holsopple*, 250 A.3d at 953-54 ("Where the competing actions were filed virtually simultaneously, warranting less deference to the winner of a race to the courthouse…the court may place less emphasis on filing priority and determine by a preponderance of the evidence whether litigating in one forum or the other would be easier, more expeditious, and less expensive").

[23]    *Royal Indem. Co. v. Gen. Motors Corp.*, 2005 WL 1952933, at *7 (Del. Super. 2005) (citing *HFTP Invs.*, 752 A.2d at 122).

[24]    *GXP Cap., LLC v. Argonaut Mfg. Servs., Inc.*, 234 A.3d 1186, 1195 (Del. Super. 2020) (quoting *In re Citigroup Inc. Shareholder Derivative Litigation*, 964 A.2d 106, 116 (Del. Ch. 2009)) (internal quotations omitted).

the filings.[25]  "Ultimately, the exercise of the court's discretion will depend upon review of the relevant practical considerations keeping in mind the broader policies of comity between the states and their courts and the orderly and efficient administration of justice."[26]

Delaware courts have found actions filed in different jurisdictions to be contemporaneous despite a plaintiff technically filing first where there is no significant time difference, and the nature of the actions are similar suggesting that the plaintiff filed in an anticipatory nature.[27]  This Court specifically has previously found actions filed two weeks apart as contemporaneously filed.[28]  Here, Janvest Israeli Litigation II was filed less than two weeks after the Delaware litigation. Plaintiff filed his Complaint in Delaware on January 15, 2021.  In the weeks leading up to that date, there were at least three communications on behalf of Janvest LP indicating Janvest LP's intent to initiate legal proceedings if Plaintiff and eVision

---

[25]     *AG Res. Hldgs., LLC v. Terral*, 2021 WL 486831, at \*3 (Del. Ch. Feb. 10, 2021).

[26]     *Id.* (citing *Adirondack GP, Inc. v. Am. Power Corp.*, 1996 WL 684376, at \*6 (Del. Ch. Nov. 13, 1996)).

[27]     *See AG Res. Hldgs.*, 2021 WL 486831, at \*3 (finding actions filed four days apart to be simultaneously filed); *see Turner Construction Co.*, 2014 WL 703808, at \*3 (treating actions filed eight days apart as contemporaneously filed because plaintiff filed "in anticipation of litigation"); *see also Holsopple*, 250 A.3d at 954 (stating that while the Delaware action was technically filed first, the California action, filed five days after, was "roughly contemporaneous").

[28]     *See Williams Gas Supply Co. v. Apache Corp.*, 1991 WL 18091, at \*1-3 (Del. Super. Feb. 12, 1991) (treating actions filed two weeks apart as contemporaneously filed because plaintiff filed in anticipation of another suit).

did not cooperate.[29]  About a week following Janvest LP's last letter threatening litigation, Plaintiff filed his Complaint in Delaware alleging defamation.  Plaintiff beat Defendants to the courthouse by thirteen days.

The temporal proximity of the filing, the known imminence of Janvest Israeli Litigation II, and the similarity in substance between Plaintiff's action and Janvest Israeli Litigation II suggests that Plaintiff engaged in a race to the courthouse.  To avoid rewarding the winner of such a race, the Court considers the actions contemporaneously filed.  As such, the Court affords neither party first-filer preference and will analyze the *Cryo-Maid* factors without deference to either forum.

B. The *Cryo-Maid* Factors Weigh in Favor of a Stay

Having established that neither forum is afforded deference, the Court now turns to an analysis of the *Cryo-Maid* factors.  The Court finds that each factor

---

[29]  The first communication was the Demand Letter sent to Zilberstein on December 9, 2020 where Janvest LP's counsel threatened litigation if Zilberstein and eVision did not repay Janvest LP for the misappropriated funds.  The second communication was Defamatory Email 3, cited in Zilbertstein's Complaint and sent on December 15, 2020, where Frankenstein announced his intent to pursue litigation seeking monetary compensation from Zilberstein.  The third communication was on January 7, 2021 from Janvest LP's counsel indicating that further warning will not be sent.  The Court recognizes that Zilberstein was not a direct recipient of the second and third communications.  The Court infers, however, that Zilberstein was aware of the second communication as it is attached to his Complaint in this action.  The Court also infers Zilberstein's awareness of the third communication as it was sent to his co-defendant's counsel in Janvest Israeli Litigation I.  Even if Zilberstein was unaware of the second and third communications, he received the December 9, 2020 Demand Letter putting him on notice of impending litigation.

weighs in favor of staying Plaintiff's action in Delaware pending resolution of Janvest Israeli Litigation II.

1. *Existence of Similar Litigation*

The first *Cryo-Maid* factor addresses the existence of litigation involving substantially similar parties or subject matter, and the pendency of the competing litigation.[30] In evaluating existing similar litigation, the court must consider issues of "comity and the necessities of an orderly and efficient administration of justice" such as whether the actions are duplicative.[31] Another consideration is the amount of judicial resources expended in the other matter. "If a judge in one forum has invested actual, substantive effort in a case, a competing forum should consider carefully whether one of its judges should make a similar case-specific investment."[32]

Here, this factor weighs in favor of allowing the Israeli litigation to proceed. In Janvest Israeli Litigation II, the court in Israel held a hearing on October 25, 2021 where the court ordered the parties to complete document production and engage in pre-mediation meetings to try to settle the claim.[33]

---

[30] *Gramercy Emerging Mkts. Fund v. Allied Irish Banks, P.L.C.*, 173 A.3d 1033, 1037 (Del. 2017).
[31] *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281, 283 (Del. 1970).
[32] *Hamilton P'rs v. Englard*, 11 A.3d 1180, 1217 (Del. Ch. 2010).
[33] *See* Dkt. 24.

This Court has yet to address the pleading-stage viability of Plaintiff's claims, let alone whether the Court has personal jurisdiction over Frankenstein, and no discovery has taken place. Although the causes of action are not identical, the core of both actions revolve around the same nexus of facts. Janvest Israeli Litigation II involves the truth or falsity of the allegedly defamatory statements at the crux of Plaintiff's Complaint. Thus, it is in the interest of the efficient administration of justice to allow Janvest Israeli Litigation II to proceed and stay Plaintiff's action pending resolution in Israel. As such, this factor weighs heavily in favor of the Defendants.

2. *Applicability of Delaware Law*

The second factor— "whether or not the controversy is dependent upon the application of Delaware law ..."[34]—relates to whether Delaware law governs the dispute. This factor does not merely involve an "academic inquiry into what law to apply."[35] The fact that Delaware law may govern is not conclusive.[36] Rather, the factor focuses on Delaware's degree of interest in the dispute.[37] Absent a central novel and substantial issue of Delaware law, this factor is typically accorded less

---

[34]    *Gen. Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681, 684 (Del. 1964).
[35]    *Holsopple*, 250 A.3d at 956.
[36]    *In re Chambers Dev. Co., Inc. Shareholders Litig.*, 1993 WL 179335, at *3 (Del. Ch. 1993) (citing *Jim Walter Corp. v. Allen*, 1990 WL 3899, at *5 (Del. Ch. Jan. 12, 1990)).
[37]    *Holsopple*, 250 A.3d at 956.

weight than other significant factors.[38]  In evaluating this factor, the court should consider the "nature and novelty of questions of law to be answered, the desirability of providing a Delaware forum, and the importance of overseeing the conduct of particular classes of actors and policing against particular types of wrongdoing."[39]

Though Plaintiff contends that Delaware law governs his defamation action, it is not clear whether Delaware substantive law applies.  Defendants argue that in a defamation action, the local law where the publication occurs determines the applicable substantive law.[40]  The Court has not conducted a conflict of laws analysis determining what law governs.  Thus, it is not certain that Plaintiff's claims require application of Delaware law.

Even if Delaware law applies, Plaintiff's defamation claim does not raise any novel or substantial issues of Delaware law.  The mere fact that a defendant is a Delaware entity is not sufficient to avoid a stay or dismissal.  As the Supreme Court of Delaware explained, "even Delaware corporations can avoid facing suit in Delaware, where the connection between the claims at issue and Delaware are attenuated and the defendant corporation faces an undue burden."[41]  The Supreme Court has applied this same rationale to nonresident officers and directors.[42]  Here,

---

[38]     *See Hoover Indus. v. Chase*, 1988 WL 73758, at *4 (Del. Ch. July 13, 1988).
[39]     *Hamilton P'rs*, 11 A.3d at 1213.
[40]     Def.'s Op. at 12.
[41]     *Hazout v. Ting*, 134 A.3d 274, 279 (Del. 2016).
[42]     *Id.*

15

the only connection between Plaintiff's claim and Delaware is that the Janvest entities are registered in Delaware. Accordingly, this factor weighs in favor of the Defendants.

### 3. *Ease of Access to Proof*

The third factor—the ease of access to proof—requires the Court to evaluate the evidence's proximity to the competing fora.[43] Though "[w]ith current technology, the importance of this factor has faded for corporate and commercial disputes."[44]

Here, most of the potential witnesses, documents, and other evidence are in Israel. Plaintiff acknowledged at the hearing on the Motion to Dismiss that the evidence and witnesses are not in Delaware but located in another country.[45] Plaintiff resides in Israel. The recipients of the allegedly defamatory emails at issue reside in Israel. eVision is based in Israel. The Janvest entities operate in Israel. Janvest Israeli Litigation I, which sheds light on the truth or falsity of the allegedly defamatory emails, occurred in Israel. Janvest Israeli Litigation II is pending in Israel. Again, the Defendants' lone connection to Delaware is the entities' place of

---

[43] *Turner Construction Co.*, 2014 WL 703808, at *5 (quoting *In re Asbestos Litig.*, 929 A.2d 373, 383 (Del. Super. 2006)).
[44] *Id.* at 973.
[45] *See* Oral Arg.Tr. 17:16-17, 18:5-7.

registration. The Court also notes that some of the evidence could be in another language, namely Hebrew. Thus, this factor weighs in favor of the Defendants.

### 4. *Availability of Compulsory Process*

The fourth factor—the availability of compulsory process for witnesses—asks whether the court can compel the relevant witnesses to appear.[46] This Court has identified this factor as an "important consideration in assessing the appropriateness of a forum."[47] It requires the Court to evaluate whether "another forum would provide a substantial improvement as to the number of witnesses who would be subject to compulsory process."[48] The Court may also take into consideration the importance of the inconvenienced witnesses.[49] When there is a similar action pending in a forum where a compulsory process is available for the witnesses, this factor favors a stay.[50]

Here, Defendants assert that necessary and relevant witnesses reside in Israel. The recipients of the allegedly defamatory statements are Israeli citizens, the misconduct alleged in the defamatory statements occurred in Israel, and the alleged damages to Plaintiff's reputation in the community is in Israel, where Plaintiff

---

[46] *Cryo-Maid*, 198 A.2d at 685.
[47] *Monsanto*, 559 A.2d at 1307.
[48] *Mt. Hawley Ins. Co. v. Jenny Craig, Inc.*, 668 A.2d 763, 769 (Del. Super. 1995).
[49] *Monsanto*, 559 A.2d at 1308.
[50] *See Chambers Dev. Co.*, 1993 WL 179335, at *6.

resides.  Plaintiff conceded during the hearing on the Motion to Dismiss that "there [i]s a witness who is unwilling to appear in a Delaware court."[51]

To obtain testimony from witnesses in Israel unwilling to appear in Delaware, the parties would need to rely on the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention on Evidence").[52] Under the Hague Convention on Evidence, a signatory to the Convention may request evidence from another signatory for use in judicial proceedings.[53]  The United States and Israel are signatories to the Hague Convention on Evidence.  Thus, the parties may obtain testimony from unwilling witnesses through letters of request.[54]

This process, however, presents several challenges.  For one, letters of request are just that – requests – and thus, may be rejected.[55]  A letter of request also does not compel live testimony at trial.[56]  Rather, the parties would have to rely on

---

[51]     Oral Arg. Tr. 18:22-23, 19:1.
[52]     *See, e.g.*, *Ingenico Inc. v. Ioengine LLC*, 2021 WL 765757 (D. Del. Feb. 26, 2021).
[53]     Hague Evidence Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention on Evidence") art. 1, Mar. 18, 1970, 23 U.S.T. 2555.
[54]     *Id.*; 28 U.S.C. § 1781.
[55]     Hague Convention on Evidence art. 11-12.
[56]     *In re Air Crash at Madrid, Spain on August 20, 2008*, 893 F.Supp.2d 1020, 1032 (C.D. Cal. 2011); *Mastafa v. Australian Wheat Bd. Ltd.*, 2008 WL 4378443, at *8 (S.D.N.Y. Sept. 25, 2008).

18

deposition transcripts,[57] a condition that the United States Supreme Court has noted is "not satisfactory to court, jury or most litigants."[58]  Lastly, other courts have noted the procedures' shortcomings, describing it as "a difficult and time-consuming – if not altogether futile – endeavor"[59] and "notoriously inefficient."[60]

Here, a party seeking to obtain testimony from a witness in Israel must first file with this Court a motion for issuance of letters of request.[61]  If approved, the request is forwarded to the Central Authority for Israel.[62]  Once received, Israel has the discretion, albeit limited, to reject the request under certain circumstances.[63]  Only upon approval from Israel can counsel begin scheduling deposition proceedings.  Even still, the witness may oppose the discovery sought if such discovery is impermissible pursuant to Israeli law.[64]  This is but a rudimentary summary of an arduous process that does not yield live testimony, but rather a transcript, and the potential challenges that accompany it.

---

[57]     *In re Air Crash at Madrid*, 893 F.Supp.2d at 1032.
[58]     *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947).
[59]     *Melgares v. Sikorsky Aircraft Corp.*, 613 F.Supp.2d 231, 243 n.8 (D. Conn. 2009).
[60]     *Da Rocha v. Bell Helicopter Textron, Inc.*, 451 F.Supp.2d 1318, 1325 (S.D. Fla. 2006).
[61]     Super. Ct. Civ. R. 28.
[62]     Hague Convention on Evidence art. 2.
[63]     Hague Convention on Evidence art. 5, 6, 11, 12.
[64]     Hague Convention on Evidence art. 9, 11.

The difficulties facing a party seeking compulsory process from an Israeli witness hinder this Court from being an ideal forum. In contrast, there is a similar action pending in Israel that avoids these challenges. In Janvest Israeli Litigation II, witness availability is greater and simpler as Israel is where most of the witnesses are located, where the conduct at issue occurred and where Janvest Israeli Litigation II is pending. Thus, given this Court's limited ability to issue the necessary compulsory process and the action pending in an alternative forum that avoids these confines, this factor weighs heavily in favor of the Defendants.

5. *Other Practical Considerations*

The final *Cryo-Maid* factor requires the court to consider any other practical considerations that would make litigation easy, expeditious, and inexpensive.[65] This factor "is neither hollow in meaning nor rigid in its application."[66] In evaluating this factor, Delaware courts have considered the state and public interest in adjudication, judicial economy, plaintiff's motives, and language barriers for foreign witnesses. The potential boundaries of what a court may consider are "limited only by the imagination of creative counsel."[67]

---

[65] *Cryo-Maid*, 198 A.2d at 684.
[66] *Martinez*, 86 A.3d at 1112.
[67] DONALD J. WOLFE, JR. & MICHAEL A. PITTENGER, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY, SECOND EDITION § 5.02[g] 5-52 (Matthew Bender & Co., 2d ed. 2018).

This Court has found in favor of a stay where the only connection between the parties and Delaware is the place of incorporation.[68] That is the case here. Plaintiff is not a resident of Delaware. Frankenstein is not a resident of Delaware. The only connection this case has to Delaware is the Janvest entities' place of registration. Thus, considerations of the state and public interest weigh in favor of Defendants.

Given the procedural posture of the competing action, its relevance to the competing forum, and its duplicative nature to the case at hand, considerations of judicial economy weigh in favor of Defendants.

Considering the circumstances surrounding Plaintiff's filing, it appears that Plaintiff filed his Complaint in Delaware in anticipation of Janvest Israeli Litigation II. While Defendants' communications prior to Plaintiff's filing showed an intent to pursue litigation if necessary, they also indicated a desire to negotiate a resolution outside of the courthouse if possible. Plaintiff ignored Defendants' requests and commenced a defamation action in Delaware. Thus, Plaintiff's motives indicate an attempt to preempt Defendants' suit in Israel.

The potential language barrier that may arise if this case proceeds in Delaware also weighs in favor of Defendants. Delaware courts have noted that language

---

[68] *Royal Indem.*, 2005 WL 1952933, at *11.

barriers can present a problem under the practical considerations factor.[69] When language barriers require translation for evidence or witnesses and an alternative appropriate forum is available, Delaware courts have found this factor to weigh in favor of a stay.[70] Here, most of the potential witnesses are in Israel and the evidence in Hebrew, thus requiring translation. Considering the potential language barrier, Israel is the more appropriate forum.

The practical considerations all point to Israel, where Janvest Israeli Litigation II is pending, as the appropriate forum for this dispute. Thus, this factor weighs overwhelmingly in favor of the Defendants.

## V. Conclusion

The Plaintiff is in Israel, not Delaware. The entities involved are in Israel, not Delaware. The evidence is in Israel, not Delaware. The potential witnesses are in Israel, not Delaware. The alleged misconduct at the core of both actions occurred in Israel, not Delaware. It is not clear whether Delaware law even applies. The lone connection Plaintiff's action has to Delaware is that the Janvest entities are registered in Delaware. There is an action involving the same facts pending in Israel. The

---

[69] *Aveta, Inc. v. Colon*, 942 A.2d 603, 614 (Del. Ch. 2008) ("This Court has previously considered language barriers when applying the *forum non conveniens* doctrine").

[70] *Aveta*, 942 A.2d at 614 (granting a stay where a language barrier existed thus requiring a translator for evidence and witnesses, and the *Cryo-Maid* factors weighed in favor of the defendant); *see also Eurofins Pharma US Hldgs., Inc. v. Bioalliance Pharma SA*, 2009 WL 2992552, at *7 (D. Del. Sept. 18, 2009).

Court finds that the application of the *Cryo–Maid* factors weigh in favor of staying this case pending the current Israeli litigation. Because the Court has decided to stay the action in deference to Janvest Israeli Litigation II, it will not decide whether jurisdictional discovery is appropriate at this time.

Accordingly, Defendants' Motion to Dismiss or Stay Plaintiff's Complaint is GRANTED in part. This action is stayed pending the outcome of Janvest Israeli Litigation II. IT IS SO ORDERED.

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**